UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELIZABETH A. CAMPBELL,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>SWEDISH CLUB CULTURAL CENTER, et al.,<br><br>　　　　　　Defendants. | CASE NO. C24-0816JLR<br><br>ORDER |

## I.　INTRODUCTION

Before the court are two motions filed by Defendants Swedish Club Cultural Center (the "Swedish Club") and Elizabeth M. Norgren: (1) a renewed motion to dismiss (MTD (Dkt. # 27); MTD Reply (Dkt. # 32)); and (2) a renewed alternative motion to stay or dismiss (MTS (Dkt. # 28); MTS Reply (Dkt. # 31)).  Plaintiff Elizabeth A. Campbell

ORDER - 1

filed a combined opposition to both motions.[1]  (*See* Resp. (Dkt. # 30).)  Being fully advised,[2] the court DENIES Defendants' motion to dismiss (Dkt. # 27).  The court DISMISSES with prejudice Ms. Campbell's claims for damages under Title II of the Civil Rights Act of 1964.  Furthermore, as the court discusses below, the court ORDERS supplemental briefing on Defendants' alternative motion to stay or dismiss (Dkt. # 28).

## II.    BACKGROUND

The court first summarizes Ms. Campbell's allegations in this litigation.  The court then discusses other lawsuits initiated by Ms. Campbell against the Swedish Club and individuals associated with the Swedish Club.

### A.    Factual Background

Ms. Campbell was a member of the Swedish Club from August 2020 until March 10, 2023, and she has not entered Swedish Club property or attended Swedish Club events since March 1, 2023.  (Compl. (Dkt. # 1) ¶¶ 2.1, 4.15, 4.40, 4.54.)  Ms. Campbell alleges that she has a "very obvious and medically diagnosed" disability.  (*Id.* ¶¶ 4.17.)

---

[1] On November 1, 2024, Defendants separately moved both to dismiss and to dismiss or stay this action.  (*See* 11/1/24 MTD (Dkt. # 12); 11/1/24 MTS (Dkt. # 14).)  On November 27, 2024, the court stayed this matter for 60 days at the request of the parties.  (*See* 11/27/24 Order (Dkt. # 16).)  On February 28, 2025, after the stay lifted, Ms. Campbell responded to the Defendants' November 1, 2024 motions.  (*See* 2/28/25 Resp. (Dkt. # 26).)  Defendants then renewed their motions (*see* MTD; MTS), and Ms. Campbell renewed her response (*see* Resp.).  Accordingly, the court treats the renewed motions and response as withdrawing, respectively, the prior motions and response.

[2] The parties do not request oral argument.  (*See* MTD at 1; MTS at 1; Resp. at 1.)  The court concludes that oral argument is not necessary to decide Defendants' motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

In the spring of 2021, Kristine Leander, then the executive director of the Swedish Club, informed Ms. Campbell that she could not be hired as a cook because Ms. Campbell is not Swedish, and Ms. Leander prevented Ms. Campbell from applying for open positions with the Swedish Club as a cook and as a volunteer coordinator. (*Id.* ¶¶ 4.19-4.20.) On November 24, 2021, Ms. Campbell became a part-time cook at the Swedish Club. (*Id.* ¶ 4.23.) Later, she became a dessert cook. (*Id.*) In January 2022, a new position opened at the Swedish Club for a foodservice department manager, but Ms. Leander refused to consider Ms. Campbell for the position—this time, allegedly, because of Ms. Campbell's disability and age. (*Id.* ¶¶ 4.25-4.26.)

Between 2021 and 2022, Ms. Campbell made several complaints about and shared several grievances with the Swedish Club, its members, and its employees. For instance, Ms. Campbell made an inquiry about construction costs at the Swedish Club "and the work ethic of the Club's then general contractor[.]" (*Id.* ¶ 4.21.) Ms. Campbell later "notified the Swedish Club board of directors about a situation" involving other club members that was "negatively affecting Ms. Campbell's rights . . . to be free from sexual harassment." (*Id.* ¶ 4.24.) Separately, Ms. Campbell also told the Swedish Club that there were "a number of [] repairs and health and safety improvements" needed in the club's kitchen. (*Id.* ¶ 4.25.)

In late April or early May of 2022, Ms. Campbell filed complaints against the Swedish Club with (1) the Equal Employment Opportunity Commission ("EEOC"), (2) the Washington Human Rights Commission, and (3) the Seattle Office of Civil Rights, alleging discrimination, harassment, a hostile workplace, and retaliation. (*Id.*

¶ 4.29.) On May 8, 2022, she also filed a health department complaint concerning the Swedish Club's kitchens. (*Id.* ¶ 4.31.) Ms. Campbell notified the board of the Swedish Club of her four complaints. (*Id.* ¶¶ 4.30-4.31.) She then continued, "from time to time[,]" to contact the Swedish Club in writing and to speak up in meetings to complain about "ongoing discrimination . . . subsequent retaliation, isolation, and the hostile workplace" at the Swedish Club. (*Id.* ¶ 4.30.) Ms. Campbell continued to voice her concerns both in writing and at Swedish Club meetings for several months, from May 4, 2022 until March 1, 2023. (*Id.*)

On March 1, 2023, at a Swedish Club board meeting that Ms. Campbell attended as a member, Ms. Campbell again "spoke out and complained" about the mistreatment she allegedly had suffered. (*Id.* ¶ 4.35.) The Swedish Club board did not respond to Ms. Campbell's complaints, but another meeting attendee allegedly "verbally abused then physically roughed up Ms. Campbell." (*Id.* ¶ 4.37.) Ms. Campbell contacted law enforcement, alleging that the other attendee committed "assault, battery, and false imprisonment[.]" (*Id.* ¶ 4.37.)

On March 3, 2023, a manager at the Swedish Club placed Ms. Campbell on a paid suspension pending an investigation into the events of March 1, 2023. (*Id.* ¶ 4.38.)

On March 6, 2023, Ms. Norgren replaced Ms. Leander as executive director of the Swedish Club. (*Id.* ¶ 4.39.)

On March 10, 2023, the Swedish Club notified Ms. Campbell that her employment and membership with the Swedish Club was terminated and that she was not to enter the Swedish Club's property. (*Id.* ¶ 4.40.) Shortly thereafter, Ms. Campbell wrote to the

1  City of Seattle Office of Civil Rights to complain about her termination, and, later that
2  month, she visited the City of Seattle Office of Civil Rights in person to complain again
3  about "the adverse actions the Swedish Club had taken against her[.]" (*Id.* ¶ 4.41.)
4        Because of the notice barring her from the Swedish Club's property and events,
5  Ms. Campbell has not attended several events that she wished to attend, which were
6  otherwise open to the public, including breakfasts, dinners, meetings, language and craft
7  courses, and dance lessons. (*See id.* ¶¶ 4.56-4.58.)
8  **B.**    **Ms. Campbell's Lawsuits**
9        On December 19, 2023, Ms. Campbell filed suit in state court against Sharon
10 Lucas,[3] Ms. Norgren, the Swedish Club, and several other individuals. *See Campbell v.*
11 *Lucas, et al.*, No. 23-2-2519-4 SEA (King Cnty. Super. Ct.). She amended her complaint
12 on March 11, 2024. (Rhodes Decl. (Dkt. # 13) ¶ 3, Ex. 2 ("*Lucas* Am. Compl.")). As
13 amended, Ms. Campbell's verified complaint comprised 84 causes of action and 390
14 pages, not including its exhibits. (*See generally Lucas* Am. Compl.) She asserted
15 various claims arising from her time as a member of the Swedish Club, her employment
16 with the Swedish Club, discrimination she allegedly suffered, and the termination of her
17 employment and membership with the Swedish Club. (*See id.* at 312-84 (Causes of
18 Action 1-84).) On September 26, 2024, the Superior Court granted summary judgment in
19 favor of Ms. Norgren on all claims in Ms. Campbell's complaint. (Rhodes Decl. ¶ 4,
20 Ex. 7.)
21
22     [3] Ms. Lucas is also a member and employee of the Swedish Club. (*See* Compl. ¶ 4.37.)

ORDER - 5

1     Between April and June 2024, Ms. Campbell filed several other lawsuits against
2  the Swedish Club or individuals associated with the club.  (*See* Rhodes Decl. ¶ 3,
3  Exs. 3-5 (complaints in each of the other suits)); *see also Campbell v. Matthiesen, et al.*,
4  No. 23-2-25128-8 SEA (King Cnty. Super. Ct.); *Campbell v. Swedish Cultural Center, et
5  al.*, No. 24-2-14525-7 SEA (King Cnty. Super. Ct.); *Campbell v. Swedish Cultural
6  Center, et al.*, No. 24-2-09698-1 SEA (King Cnty. Super. Ct.).  On May 16, 2024, Ms.
7  Campbell also filed a defamation suit against Michael Rhodes, the attorney who
8  previously represented the Swedish Club and Ms. Norgren, as well as against Mr.
9  Rhodes's spouse and law firm, and against individuals associated with that law firm.
10 (*See* Rhodes Decl. ¶ 3, Ex. 6); *see also Campbell v. Rhodes, et al.*,
11 No. 24-2-11117-4 SEA (King Cnty. Super. Ct.).
12    On June 7, 2024, Ms. Campbell filed this action, alleging public accommodations
13 discrimination under (1) Title II of the Civil Rights Act of 1964; (2)  the Washington Law
14 Against Discrimination; and (3) the Seattle Municipal Code.  (Compl. at 17-22.)

### III.   DISCUSSION

16    The court first addresses the parties' failure to comply with this district's local
17 rules concerning the form and scheduling of motions.  *See generally* Local Rules W.D.
18 Wash. LCR 7.  The court then turns to Defendants' alternative motions to dismiss or to
19 dismiss or stay this action.

**A.    Local Civil Rules Compliance**

21    This district's local rules set out in detail various requirements for the form and
22 scheduling of motions.  Pertinent here, these rules include word limits for motions and

responses, *see* Local Rules W.D. Wash. LCR 7(e), and procedures for parties to seek leave to file over-length motions and briefs, *see id.* LCR 7(f). When word limits apply, parties must include a certification in their signature blocks specifying compliance and noting the number of words used. *See id.* LCR 7(e)(6). Absent leave of the court, parties cannot attempt to avoid the applicable word limits for dispositive motions by filing contemporaneous motions, each "directed toward a discrete issue or claim." *Id.* LCR 7(e)(3). *Pro se* litigants are subject to the same procedural requirements as those who are represented by counsel. *See, e.g.*, *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022); *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997).

In briefing the motions before the court, Defendants and Ms. Campbell both failed to follow this district's rules. Defendants failed to follow applicable word limits by improperly filing two separate motions, each styled as an alternative request for relief. (*See* MTD; MTS); *see also* Local Rules W.D. Wash LCR 7(e)(3) (setting limit of 8,400 words and prohibiting "contemporaneous dispositive motions, each one directed toward a discrete issue or claim"). Ms. Campbell cites Defendant's failure to follow the applicable rules (*see* Resp. at 5-7), but she also violated the same word count restriction (*see id.* at 37.). Additionally, Ms. Campbell improperly omitted the word counts of both her footnotes and her comparison tables in calculating and certifying the word count of her response. (*See* Resp.); Local Rules W.D. Wash LCR 7(e)(6).

The court exercises its discretion to reach the merits of the parties' submissions despite their failure to follow the applicable rules, but the court cautions that it will not do so in the future absent a proper request, supported by good cause, for leave to file an

1  overlength submission.  The court advises that it grants such requests sparingly, and it
2  discourages the parties from seeking leave except in exceptional circumstances.  The
3  court further directs Ms. Campbell and counsel for Defendants to carefully review the
4  Local Civil Rules, which are available on this District's website at
5  https://www.wawd.uscourts.gov/local-rules-and-orders, and to ensure that all future
6  filings comply with these rules.

**B.    Defendants' Motion for a *Colorado River* Dismissal**

Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976) (quotation marks and citation omitted); *see also Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1187 (9th Cir. 2024) ("Federal courts have a virtually unflagging obligation to exercise the jurisdiction given them.") (cleaned up).  Exceptional circumstances, however, can sometimes support staying or dismissing federal litigation in favor of parallel state proceedings.  *Colorado River*, 424 U.S. at 813, 817 (cleaned up).  Pertinent here, in appropriate cases, a federal court may dismiss a case under *Colorado River* based on administrative concerns, to "prioritize efficient disposition of litigation through the wise deployment of judicial resources[.]"  *See Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 836 (9th Cir. 2023).

Unlike traditional abstention doctrines, a *Colorado River* dismissal is not based upon proper constitutional adjudication of disputes and regard for federal–state relations, but instead serves "wise judicial administration, giving regard to conservation of judicial

resources and comprehensive disposition of litigation[.]" *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1202 (9th Cir. 2002).  A *Colorado River* dismissal must be reserved for "rare cases[.]" *State Water Res. Control Bd.*, 988 F.3d at 1202; *see also R.R. Street & Co. Inc. v. Trans. Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011) ("The Court has carefully limited *Colorado River*, emphasizing that courts may refrain from deciding an action for damages only in exceptional cases, and only the clearest of justifications support dismissal.") (quotation marks and citation omitted).

As a threshold matter, a *Colorado River* dismissal is not available if state and federal proceedings are not sufficiently parallel, such where there remains "a substantial doubt as to whether the state proceedings will resolve the federal action[.]" *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993); *see also Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 28 (1983) ("When a district court decides to . . . stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."); *Ernest Bock, LLC*, 76 F.4th at 838 ("Parallelism is a threshold requirement for a *Colorado River* stay[.]").  Substantial doubt exists where "the state court proceedings will fully resolve the federal case *only if* the state court rules in one of two ways." *Ernest Bock, LLC*, 76 F.4th at 838 (emphasis in original).  It also exists where the state litigation does not involve "the same parties and issues[,]" such that it will not "completely and finally resolve the issues between the parties[.]" *Id.* at 840 (quoting *Marcus v. Abington*, 38 F.3d 1367, 1371-72 (3d Cir. 1994); *see Mendocino Ry.*, 113 F.4th at 1191 (explaining that a *Colorado River* stay or dismissal is "inappropriate

when the state proceeding could result in an outcome that would still require additional litigation in the federal case").[4]

Defendants argue that Ms. Campbell's suit here is a "spinoff" of the *Lucas* action and, accordingly, is sufficiently parallel with the *Lucas* action to support a *Colorado River* dismissal. (MTD at 10.) Specifically, Defendants assert that both *Lucas* and Ms. Campbell's federal suit are "related to public accommodation claims" and "arise from the same operative facts." (MTD at 10; MTD Reply at 5-6.) Defendants do not specify, however, which operative facts are common to the actions, nor do they include any citations to the relevant portions of the 390-page amended complaint in *Lucas* or to Ms. Campbell's complaint here to support their argument. (*See generally* MTD; MTD Reply); *see also Clark v. Chappell*, 936 F.3d 944, 982 (9th Cir. 2019) ("Judges are not like pigs, hunting for truffles buried in briefs.") (cleaned up). By relying upon vague, general assertions rather than specific argument, and by failing to cite relevant portions of the record supporting their request, Defendants have failed to show that they are entitled to a *Colorado River* dismissal.

---

[4] If the parallelism requirement is met, the court then evaluates eight factors in determining whether a *Colorado River* stay or dismissal is appropriate:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Seneca Ins. Co. v. Strange Land, Inc*, 862 F.3d 835, 841-42 (9th Cir. 2017) (quotation marks and citation omitted).

Moreover, upon its own review of the relevant complaints, the court does not see how the *Lucas* action is sufficiently parallel to the action here to support a *Colorado River* dismissal. The claims in the *Lucas* case focused on Ms. Campbell's membership and employment with the Swedish Club before March 10, 2023 and include allegations that the Swedish Club, its board, and Ms. Norgren mismanaged the Swedish Club's governance and funding; obstructed member attendance at and participation in board meetings; and made hiring and management decisions improperly, including by making decisions on the basis of national origin. (*See, e.g.*, *Lucas* Am. Compl. ¶¶ 1.37, 5.103-5.104, 5.122, 5.124-5.127, 5.158.) In contrast, the complaint here focuses on the period *after* the Swedish Club terminated Ms. Campbell's membership and alleges that Defendants improperly prevented Ms. Campbell from participating in the Swedish Club's public events after March 2023—i.e., after Ms. Campbell lost her membership and became a member of the general public. (*See* Compl. ¶¶ 4.54, 4.57, 4.60; *see also id.* ¶ 4.56 (listing public events held by the Swedish Club from March 2023 through May 2024).) Accordingly, the court denies Defendants' motion for a *Colorado River* dismissal.

**C.     Defendants' Alternative Motion to Stay or Dismiss**

In their alternative motion to stay or dismiss this action, Defendants raise several arguments: (1) Ms. Campbell's claims for damages under Title II of the Civil Rights Act of 1964 ("Title II"), 42 U.S.C. § 2000a, *et seq.*, must be dismissed because damages are not available under Title II; (2) Ms. Campbell's claims are barred by the doctrine of claim

preclusion; and (3) Ms. Campbell's complaint lacks sufficient facts to state a claim against Ms. Norgren. (MTS at 6-10.) The court addresses each argument in turn.

### 1. The Court Must Dismiss Ms. Campbell's Claims For Title II Damages.

A plaintiff bringing an action under Title II of the Civil Rights Act of 1964 may obtain an injunction but cannot obtain damages. *See, e.g.*, *Newman v. Piggie Park Enters.*, 390 U.S. 400, 401-02 (1968); *see also Jones v. Brouwers*, 859 F. App'x 793, 793 (9th Cir. 2021) ("[D]amages are not available for violations of 42 U.S.C. § 2000a *et seq.*"); 42 U.S.C. § 2000a-3(a) (providing for civil actions to obtain injunctions and other "preventative relief" for violations of 42 U.S.C. § 2000a-2). Because damages are not available for Ms. Campbell's Title II claims, the court dismisses Ms. Campbell's claims for damages under 42 U.S.C. §§ 2000a, 2000a-1, and 2000a-2 with prejudice.

### 2. The Court Orders Supplemental Briefing Regarding Claim Preclusion.

The doctrine of claim preclusion, also referred to as *res judicata*, "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (citation omitted); *see also Weaver v. City of Everett*, 450 P.3d 177, 186 (Wash. 2019) ("[U]nlike collateral estoppel, which precludes relitigation of specific issues, res judicata precludes entire claims when those claims either were brought or could have been brought in a prior action.") In applying the claim preclusion doctrine, federal courts must give preclusive effect to state-court judgments to the same extent that those judgments would have preclusive effect under the law of the state in which they were rendered. *See Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007). In Washington, if a prior

proceeding "culminated in a judgment on the merits[,]" a party seeking to invoke the doctrine of *res judicata* in a later proceeding must establish "concurrence of identity" between the earlier and later proceeding in terms of: (1) subject-matter; (2) cause of action; (3) persons and parties; and (4) "the quality of the persons for or against whom the claim is made." *Weaver*, 450 P.3d at 185.

Defendants assert that two judgments from the *Lucas* action have preclusive effect here.[5] First, the Superior Court entered an order dismissing Ms. Campbell's "[p]ost-[t]ermination" claims against, in pertinent part, the Swedish Club. (Rhodes Decl. ¶ 4.C, Ex. 7 ("*Lucas* Dismissal Order").) Second, the Superior Court granted Ms. Norgren's motion for summary judgment in the *Lucas* case. (Rhodes Decl. ¶ 4.B, Ex. 7 ("*Lucas* SJ Order").) The parties, however, have not provided sufficient argument and supporting citations to allow the court to resolve these issues.

As to the Superior Court's order of dismissal, the record does not reveal the basis for the dismissal, and the order itself does not explain the scope of the dismissal or specify whether the dismissal was entered with or without prejudice. (*See Lucas*

---

[5] Defendants also reference authority concerning the doctrine of issue preclusion, sometimes referred to as collateral estoppel. (*See* MTS at 7.) Defendants, however, conflate the concepts of claim and issue preclusion. In setting out the required elements of claim preclusion, Defendants mistakenly list the elements of issue preclusion. (*See, e.g., id.* at 7 (discussing whether *issues* are identical, and arguing that "[t]wo claims may be identical for claim preclusion purposes even where the second case contains additional facts or legal theories").) Because Defendants never explain what issues are identical between the actions, because they couch their arguments in claim preclusion language, and because their reply in support of their motion addresses only claim preclusion (*see generally* MTS Reply), the court interprets Defendants' motion as making only a claim preclusion argument. Accordingly, the court does not further address issue preclusion.

ORDER - 13

1 | Dismissal Order.)  Dismissals without prejudice do not have preclusive effect in
2 | Washington.  *See Estate of Rose v. Fritz*, 15 P.3d 1062, 1064 (Wash. Ct. App. 2001) ("A
3 | final judgment without prejudice is different from a final judgment with prejudice [] in
4 | the sense that it does not preclude a subsequent action based on the same claims.").
5 | Accordingly, the court has insufficient information to determine the preclusive effect
6 | here, if any, of the Superior Court's dismissal order in the *Lucas* case.

7 |      As to the Superior Court's grant of summary judgment in favor of Ms. Norgren,
8 | the court reaches a similar conclusion.  In Washington, "[a] grant of summary judgment
9 | at a prior proceeding is considered a final judgment on the merits."  *Emeson v. Dep't of*
10 | *Corr.*, 376 P.3d 430, 436 (Wash. Ct. App. 2016).  The court, however, must assess the
11 | four required elements of the doctrine of claim preclusion, and the parties have not
12 | provided sufficient argument and citation to allow the court to do so.

13 |      For instance, the parties fail to include any specific argument or citation to
14 | relevant legal filings to demonstrate whether the *Lucas* case encompassed the same
15 | subject matter as the present case—i.e., to demonstrate whether the *Lucas* case involved
16 | allegations that Defendants unlawfully prevented Ms. Campbell from attending the
17 | Swedish Club's public events *after* terminating her employment and membership with
18 | the Swedish Club.  (*See generally* MTS at 6-10; *see also* Compl. at 17-22 (causes of
19 | action concerning public access to Swedish Club events).)  The parties also do not
20 | address the four-factor test applied by Washington courts to analyze whether two actions
21 | involve the same cause of action.  (*See generally* MTS 6-10; Resp. at 18, 20-27); *see also*
22 |

*Emeson*, 376 P.3d at 628-35 (discussing the four-factor test to determine whether a proceeding involves the same cause of action as a prior proceeding).

Accordingly, the court ORDERS the parties to file supplemental briefing, *with citations to relevant legal authority, portions of documents filed in prior litigation, and portions of the record*, addressing the following issues: (A) Was the dismissal of Ms. Campbell's claims against the Swedish Club in the *Lucas* case with or without prejudice?; and (B) to what extent is there a concurrence of identity under Washington law between the dismissal and summary judgment decisions in the *Lucas* case and this proceeding?

    3.   The Court Orders Supplemental Briefing Regarding Whether Ms. Campbell's Complaint Fails To State A Claim Against Ms. Norgren.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A plaintiff's complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Although detailed factual allegations are not required, the plaintiff must include more than "an unadorned, the-defendant-unlawfully-harmed me accusation." *Id.* (citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Accordingly, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also* Fed. R. Civ. P. 8(a)

(requiring, in pertinent part, a "short and plain statement of the claim showing that the pleader is entitled to relief"). In reviewing a motion to dismiss, the court considers "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Defendants argue that the court should dismiss Ms. Campbell's claims against Ms. Norgren because "[v]ery little of the [c]omplaint alleges direct allegations against [Ms.] Norgren" and because, factually, Ms. Norgren was not the person who terminated Ms. Campbell's employment and membership or barred her from the Swedish Club's events.[6] (MTS at 10.) Neither Defendants nor Ms. Campbell, however, discuss the required elements of Ms. Campbell's causes of action or cite to any allegations in Ms. Campbell's complaint in debating the sufficiency of her allegations. (*See generally* MTS at 10; MTS Resp. at 27-29.)

Accordingly, the court ORDERS the parties to address the following issues in their supplemental briefing: (C) what are the elements of Ms. Campbell's public accommodations claims against Ms. Norgren under Title II, the Washington Law Against Discrimination ("WLAD"), and the Seattle Municipal Code ("SMC")?; and (D) did Ms.

---

[6] Defendants' position concerning Ms. Norgren's role contradicts the allegations in Ms. Campbell's complaint. (*See, e.g.*, Compl. ¶¶ 1.6, 4.43, 4.60 (alleging that Ms. Norgren managed and operated the Swedish Club at all relevant times, refused Ms. Campbell admission, and requested the Swedish Club's attorneys to send Ms. Campbell a letter threatening her with a lawsuit). Defendants statement is apparently based upon a declaration filed by Ms. Norgren in the *Lucas* case. (*See* Rhodes Decl. ¶ 5, Ex. 8 (declaration of Elizabeth Norgren) at 2.) The court disregards Defendants' erroneous reference to factual matter from another case because it is outside the proper scope of the court's review under Rule 12(b)(6).

Campbell plead sufficient facts to state a claim against Ms. Norgren under Title II, the WLAD, and the SMC?

## IV.   CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

1) The court DIRECTS the parties to review this District's Local Civil Rules, available at https://www.wawd.uscourts.gov/local-rules-and-orders, and to ensure that all future filings comply with these rules.

2) The court DENIES Defendants' motion to dismiss (Dkt. # 27).

3) The court DISMISSES Ms. Campbell's claims for damages under 42 U.S.C. §§ 2000a, 2000a-1, and 2000a-2 with prejudice.

4) The court ORDERS the parties each to file, by no later than 3:00 p.m. (PT) on **June 4, 2025**, supplemental briefing, *with relevant citations to legal authority, portions of the record, and portions of documents filed in prior litigation*, addressing the following issues:

A) Was the dismissal of Ms. Campbell's claims against the Swedish Club in the *Lucas* case with or without prejudice?

B) To what extent is there a concurrence of identity under Washington law between the dismissal and summary judgment decisions in the *Lucas* case and this proceeding?

C) What are the elements of Ms. Campbell's public accommodations claims against Ms. Norgren under Title II, the WLAD, and the SMC?

D)  Did Ms. Campbell plead sufficient facts to state a claim against Ms. Norgren under Title II, the WLAD, and the SMC?

The parties must limit their supplemental briefing to **3,500 words**.

5)  The court DIRECTS the Clerk to re-note Defendants' motion to dismiss or stay (Dkt. # 28) for **June 4, 2025**.

Dated this 13th day of May, 2025.

JAMES L. ROBART
United States District Judge