1

2

3

4

5

6

7               UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
8                       AT SEATTLE

9

10   ELIZABETH A. CAMPBELL,                    CASE NO. C24-0816JLR

11                      Plaintiff,             ORDER

              v.
12

13   SWEDISH CLUB CULTURAL
     CENTER, et al.,
14
                        Defendants.
15

                     **I.   INTRODUCTION**
16

17       Before the court is a motion to stay or dismiss this action filed by Defendants

18   Swedish Club Cultural Center (the "Swedish Club") and Elizabeth M. Norgren.  (MTS

19   (Dkt. # 28); MTS Reply (Dkt. # 31).)[1]  *Pro se* Plaintiff Elizabeth A. Campbell opposes

20
     _____

21       [1] Because Defendants do not include specific argument and authority concerning their
     request for a stay, and because they rely primarily upon arguments that the court should dismiss
     this action (*see generally* MTS; MTS Reply), the court treats Defendants' motion as a motion to
22   dismiss.

ORDER - 1

1  the motion.  (*See* MTS Resp. (Dkt. # 30).)  Both parties have filed supplemental briefing.

2  (Def. Br. (Dkt. # 35); Pl. Br. (Dkt. # 37); *see also* 5/13/24 Order (Dkt. # 33) at 17-18

3  (ordering supplemental briefing).)  The court has considered the parties' submissions, the

4  relevant portions of the record, and the applicable law.  Being fully advised,[2] the court

5  GRANTS in part and DENIES in part Defendants' motion to stay or dismiss.

## II.    DISCUSSION[3]

7       In their motion, Defendants raise, in pertinent part, two arguments:  (1) Ms.

8  Campbell's claims are barred by the doctrine of claim preclusion; and (2) Ms. Campbell's

9  complaint lacks sufficient facts to state a claim against Ms. Norgren.  (MTS at 6-10; Def.

10  Br. at 5-11.)  The court addresses each argument in turn.

**A.    Claim Preclusion**

12      Claim preclusion, also referred to as *res judicata*, "bars litigation in a subsequent

13  action of any claims that were raised or could have been raised in the prior action."

14  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (citation

15  omitted); *see also Weaver v. City of Everett*, 450 P.3d 177, 186 (Wash. 2019) ("[U]nlike

16  collateral estoppel, which precludes relitigation of specific issues, res judicata precludes

17  entire claims when those claims either were brought or could have been brought in a prior

18  action.")  In applying the claim preclusion doctrine, federal courts must give preclusive

19

20      [2] The parties do not request oral argument, and the court concludes that oral argument is not necessary to decide Defendants' motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

21      [3] The court discussed the factual and procedural background of this action in its prior order and does not repeat that discussion here.  (*See* 5/13/24 Order at 2-6.)  The court relies upon

22  the defined terms in its prior order.

1  effect to state-court judgments to the same extent that those judgments would have

2  preclusive effect under the law of the state in which they were rendered.  *Holcombe v.*

3  *Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007).  In Washington, a prior proceeding cannot

4  have preclusive effect unless it culminates "in a judgment on the merits[.]"  *See Weaver*,

5  450 P.3d at 185.

6       Defendants assert that two judgments from the *Lucas* action have preclusive

7  effect here.[4]  *See Campbell v. Lucas, et al.*, No. 23-2-2519-4 SEA (King Cnty. Super.

8  Ct.).  First, the Superior Court entered an order dismissing certain of Ms. Campbell's

9  claims against, in pertinent part, the Swedish Club.  (Tatistcheff Decl. (Dkt. # 36) ¶ 4,

10  Ex. B ("*Lucas* Dismissal Order").)  Second, the Superior Court granted Ms. Norgren's

11  motion for summary judgment in the *Lucas* case.  (*Id.* ¶ 6, Ex. D ("*Lucas* SJ Order").)

12  The court addresses each in turn.

13       1.  *Lucas* Dismissal Order

14       Dismissals without prejudice do not have preclusive effect in Washington, *see*

15  *Estate of Rose v. Fritz*, 15 P.3d 1062, 1064 (Wash. Ct. App. 2001), and Defendants

16  acknowledge that the Superior Court's dismissal order in *Lucas* was entered without

17  prejudice (*see* Def. Br. at 5; *see also Lucas* Dismissal Order (declining to state whether

18  the dismissal was with or without prejudice)); Wash. Civil Rule 41(a)(4) ("Unless

19

20  [4] Defendants also reference authority concerning the doctrine of issue preclusion, sometimes referred to as collateral estoppel.  (*See* MTS at 7.)  As the court explained in its prior order (5/13/24 Order at 13 n.5), Defendants' motion conflates the concepts of claim and issue

21  preclusion (*see, e.g.*, MTS at 7).  In their reply and supplemental brief, Defendants clarify that they make only a claim preclusion argument.  (*See* MTS Reply at 4-5; Def. Br. at 5-8.)

22  Accordingly, the court does not further address issue preclusion.

ORDER - 3

1    otherwise stated in the order of dismissal, the dismissal is without prejudice[.]”).

2    Accordingly, the court denies Defendants' motion to dismiss as to claim preclusion based

3    upon the *Lucas* dismissal order.

4          2.   *Lucas* Summary Judgment Order

5          In Washington, "[a] grant of summary judgment at a prior proceeding is

6    considered a final judgment on the merits." *Emeson v. Dep't of Corr.*, 376 P.3d 430, 436

7    (Wash. Ct. App. 2016).  A party seeking to invoke the doctrine of *res judicata* in a later

8    proceeding, however, must also establish "concurrence of identity" between the earlier

9    and later proceeding in terms of:  (1) subject-matter; (2) cause of action; (3) persons and

10   parties; and (4) "the quality of the persons for or against whom the claim is made."

11   *Weaver*, 450 P.3d at 185.  The court's analysis of these elements as to the *Lucas*

12   summary judgment order differs by time period.

13          a.   *Conduct by Ms. Norgren up to and Including the Termination of*
                 *Ms. Campbell's Membership with the Swedish Club*

14   Although Ms. Campbell's allegations here focus on the period after the Swedish

15   Club sent Ms. Campbell a letter, on March 9, 2023, terminating her membership and

16   barring her from the Swedish Club (*see, e.g.*, Compl. at 11, 14-15), Ms. Campbell's

17   claims also encompass the time when she was a member of the Swedish Club.

18   Specifically, Ms. Campbell includes allegations that Ms. Norgren wrongfully terminated

19   Ms. Campbell's employment with the Swedish Club and terminated or attempted to

20   terminate Ms. Campbell's membership.  (*Id* at 8, 11, 13-14, 22.)  As the court explains

21   below, the doctrine of claim preclusion bars these claims against Ms. Norgren.

22

1      First, these claims are wholly subsumed within the *Lucas* action.  In *Lucas*,

2    Ms. Campbell's 390-page, 84-count operative complaint included extensive allegations

3    and claims concerning the time before and including March 9, 2023, including (1) the

4    termination of Ms. Campbell's Swedish Club membership and whether it was effective

5    (*e.g.,* Rhodes Decl. (Dkt. # 15) ¶ 2, Ex. A ("*Lucas* Compl.") at 35-37, 189-90, 345);

6    (2) the denial of membership benefits to Ms. Campbell (*e.g.*, *id.* at 53-54, 287-95, 345,

7    368-69, 382-84, 386); and (3) alleged discrimination against Ms. Campbell related to her

8    employment, prospective employment, and termination of employment with the Swedish

9    Club (*e.g.*, *id.* at 143, 287-95 345-46, 368-69, 377-79).

10      Second, Ms. Campbell, in effect, simply reasserts the same causes of action

11    against Ms. Norgren here that she already asserted in the *Lucas* action.  To determine

12    whether causes of action have a concurrence of identity under Washington law, courts

13    consider whether:  (1) rights or interests established in the prior judgment would be

14    impaired by prosecuting the second action; (2) substantially the same evidence is

15    presented in the two actions; (3) the two suits involve infringement of the same right; and

16    (4) the two suits arise out of the same transactional nucleus of facts.  *See, e.g.*, *Emeson*,

17    376 P.3d at 628-35.

18      The court has no difficulty concluding that there is a concurrence of identity

19    between the claims in the *Lucas* action and Ms. Campbell's present clamis.  In *Lucas*,

20    Ms. Campbell asserted claims against Ms. Norgren under Title VII of the Civil Rights

21    Act of 1964 and the Washington Law Against Discrimination ("WLAD").  (*See Lucas*

22    Compl. at 377-79, 382-83.)  These claims have substantially the same elements as Ms.

ORDER - 5

1   Norgren's present claims of discrimination under Title II of the Civil Rights Act of 1964,

2   the WLAD, and the Seattle Municipal Code ("SMC").[5]  Accordingly, to the extent that

3   the claims here *also* involve the time period before and including Ms. Campbell's

4   termination and the same alleged conduct, all four factors support that Ms. Campbell's

5   present claims have a concurrence of identity with her claims against Ms. Norgren in

6   *Lucas*.

7          As to the third and fourth elements, this action involves the same parties in the

8   same positions as the *Lucas* action:  Ms. Campbell is the sole plaintiff both here and in

9   *Lucas*, and Ms. Norgren is a defendant in both actions.

10         In sum, claim preclusion bars Ms. Campbell's claims against Ms. Norgren

11  concerning the period leading up to and including the termination of Ms. Campbell's

12  membership with the Swedish Club.  The court dismisses these claims with prejudice.

13                 *b.  Post-Termination Public Accommodations Claims*

14         In this action, Ms. Campbell primarily asserts claims of public accommodations

15  discrimination that she allegedly suffered after March 9, 2023, when Ms. Norgren barred

16  Ms. Campbell, as a member of the pubic, from attending public events at the Swedish

17  Club.  (*See, e.g.*, Compl. at 11, 14-15, 19-22.)  Defendants fail to show that claim

18  preclusion bars these claims.

19

20

21         [5] The court discusses the elements of each of these claims in detail below, in its analysis
    of Defendants' motion to dismiss Ms. Campbell's claims under Federal Rule of Civil Procedure
22  12(b)(6).

ORDER - 6

1    As to the first element, claim preclusion requires that the prior and present actions

2  concern the same subject matter.  *Weaver*, 450 P.3d at 185.  Defendants argue that, both

3  here and in *Lucas*, Ms. Campbell "seeks relief from being barred from the Swedish

4  Club's premises and events[.]"  (Def. Br. at 5.)  Defendants, however, misconstrue Ms.

5  Campbell's claims.  In *Lucas*, Ms. Campbell sought relief in her capacity as a member

6  and employee of the Swedish Club, alleging that she was discriminated against, that she

7  was improperly denied benefits as a member, and that her membership was improperly

8  terminated.  (*See, e.g.* Lucas Compl. at 35-37, 53-54, 189-90, 345-46.)  Accordingly, the

9  *Lucas* action concerned a different subject matter from this action, which focuses instead

10  on Ms. Campbell's allegations that Defendants discriminated against her *after* she lost he

11  membership, when she was simply a member of the public, by improperly barring her

12  from subsequent public events at the Swedish Club.  (*See* Compl. at 11, 14-15, 19-22.)

13    Indeed, in the *Lucas* action, Ms. Norgren successfully moved for summary

14  judgment on Ms. Campbell's claims for conduct that occurred after her membership and

15  employment were terminated by arguing, in relevant part, that Ms. Campbell did not have

16  standing as a nonmember to contest the Swedish Club's internal governance practices and

17  other actions that did not affect Ms. Campbell's interests.  (*See* Tatistcheff Decl. ¶ 5,

18  Ex. C (*Lucas* MSJ) at 12-14; *see also id* at 12 ("Similarly, after [Ms.] Campbell's

19  termination, [she] was not an employee or member of the [Swedish] Club."); *see also*

20  *Lucas* SJ Order (granting summary judgment without explanation).)  Here, the basis for

21  Ms. Campbell's claims differs, and Defendants make no argument that Ms. Campbell

22

ORDER - 7

1   lacks standing to sue based upon her allegations of public accommodations

2   discrimination after she lost her membership.  (*See generally* MTS.)

3          Accordingly, the *Lucas* case does not include the same subject matter as Ms.

4   Campbell's post-termination public accommodations claims in the present action.

5   Because Defendants have failed to show the first required element of claim preclusion,

6   the court denies their motion to dismiss on grounds of claim preclusion as to Ms.

7   Campbell's post-termination public accommodations claims.

8   **B.     Failure to State a Claim under Rule 12(b)(6)**

9          Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for

10  "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

11  plaintiff's complaint must "contain sufficient factual matter, accepted as true, to state a

12  claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

13  (quotation omitted).  Although detailed factual allegations are not required, the plaintiff

14  must include more than "an unadorned, the-defendant-unlawfully-harmed me

15  accusation."  *Id.* (citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

16  555 (2007) (a complaint must contain "more than labels and conclusions, and a formulaic

17  recitation of the elements of a cause of action will not do").  Accordingly, a plaintiff must

18  "plead[] factual content that allows the court to draw the reasonable inference that the

19  defendant is liable for the misconduct alleged."  *Id.*; *see also* Fed. R. Civ. P. 8(a)

20  (requiring a "short and plain statement of the claim showing that the pleader is entitled to

21  relief").  In reviewing a motion to dismiss, the court considers "only allegations

22

ORDER - 8

1  contained in the pleadings, exhibits attached to the complaint, and matters properly

2  subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

3       With these principles in mind, the court considers whether Ms. Campbell states a

4  claim upon which the court can grant relief.  Ms. Campbell alleges that the Swedish Club

5  engaged in public accommodations discrimination in violation of Title II, and that Ms.

6  Norgren engaged in public accommodations discrimination in violation of the following

7  statutes and codes:  (a)  Title II; (b) the WLAD; and (c) the Seattle Municipal Code

8  ("SMC").[6]  (*See* Compl. at 17-22.)  The court addresses each claim in turn.

9            *c.  Title II Public Accommodations Discrimination*

10       Title II prohibits discrimination in places of public accommodation based upon the

11  following protected classes:  "race, color, religion, or national origin."  *See* 42 U.S.C.

12  § 2000a(a).[7]  To assert a *prima facie* case of Title II public accommodations

13  discrimination, a plaintiff must show that he or she (1) is a member of a protected class;

14  (2) attempted to use the services of a public accommodation; (3) was denied the benefits

15  of those services; and that (4) similarly situated persons who were not members of the

16  protected class received the full benefits of the services or were treated better.  *See, e.g.*,

17  *Hager v. Brinker Texas, Inc.*, 102 F.4th 692, 700 (5th Cir. 2024); *LaRoche v. Denny's,*

18

---

19       [6] Defendants stipulate, for purposes of their motion, that Ms. Campbell has adequately
alleged that the Swedish Club "is a place of public accommodation under the definitions of all
20  three statutes[.]"  (Def. Br. at 8.)  Accordingly, the court's analysis focuses on the other elements
of Ms. Campbell's claims.

21       [7] Public accommodation claims apply the same *prima facie* standards and burdens of
proof as do employment discrimination claims under Title VII of the Civil Rights Act of 1964.
22  *See, e.g.*, *LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1370 (S.D. Fla. 1999) (citing cases).

1  *Inc.*, 62 F. Supp. 2d 1366, 1370 (S.D. Fla. 1999). As an alternative to offering

2  comparator evidence for the fourth element, a plaintiff may offer direct evidence to

3  establish a *prima facie* case, such as "evidence of conduct or statements by persons

4  involved in the decision-making process that may be viewed as directly reflecting the

5  alleged discriminatory attitude[.]" *Cf. Opara v. Yellen*, 57 F.4th 709, 722-23 (9th Cir.

6  2023) (quotation and citation omitted).

7      Here, Ms. Campbell's allegations are deficient on both the first and fourth

8  elements of her Title II claim. As to the first element, she includes no allegations

9  regarding her race, color, religion, or national origin. (*See generally* Compl.) As to the

10  fourth element, she alleges no (1) relevant comparator evidence that individuals who

11  were not members of her protected class were treated better, or (2) direct evidence that

12  Defendants' discriminatory attitude toward Ms. Campbell's race, color, religion, or

13  national origin motivated their conduct. (*See generally* Compl.); 42 U.S.C. § 2000a(a).

14  To the contrary, Ms. Campbell alleges other potential, non-discriminatory reasons that

15  Defendants banned her from the Swedish Club's public events, including Ms. Campbell's

16  disruptive conduct at Swedish Club meetings, and the confrontation between Ms.

17  Campbell and another club member that occurred shortly before Ms. Campbell's

18  membership was terminated. (*See* Compl. at 10-11.) Accordingly, Ms. Campbell fails to

19  plausibly state a claim against Defendants under Title II.

20          d.  *WLAD Public Accommodations Discrimination*

21      The WLAD provides a right to "full enjoyment" of, in pertinent part, public

22  accommodations and assemblages. RCW 49.60.030(1)(b); *see also* RCW 49.60.030(2)

1   (providing a private right of action); RCW 49.60.215 (additional provisions concerning

2   unfair practices by places of public accommodation).  To establish a *prima facie* case of

3   public accommodations discrimination under the WLAD, a plaintiff must establish the

4   following elements:  (1) the plaintiff is a member of a protected class; (2) the defendant's

5   establishment is a place of public accommodation; (3) the defendant discriminated

6   against the plaintiff by not treating the plaintiff comparably to those outside the protected

7   class; and (4) "the protected status was a substantial factor causing the discrimination."

8   *See Demelash v. Ross Stores, Inc.*, 20 P.3d 447, 456 (Wash. Ct. App. 2001).  The WLAD

9   contains a broader set of protected classes than Title II.  *Compare* RCW 49.60.030(1)

10  (including, in pertinent part, race, creed, national origin, and the presence of any sensory,

11  mental, or physical disability or use of a trained service animal by a person with a

12  disability), *with* 42 U.S.C. § 2000a(a) (including only "race, color, religion, or national

13  origin").

14      Ms. Campbell fails to allege sufficient facts to establish the first, third, and fourth

15  elements of a WLAD public accommodation claim.  As to the first element, Ms.

16  Campbell alleges that she has "a very obvious and medically diagnosed . . . mobility

17  disability[.]"  (Compl. at 7); *see also* RCW 49.60.030(1) (including as a protected class

18  individuals with "any sensory, mental, or physical disability").  Ms. Campbell, however,

19  simply alleges her top-level conclusions that she has a visible disability, and she fails to

20  allege sufficient *facts* to plausibly support those conclusions.  (*See generally* Compl); *cf.*

21  *Spencer v. Shoreline Coll.*, No. C23-969RSM, 2023 WL 4546379, at *2 (W.D. Wash.

22  July 14, 2023) ("It is not clear to the Court what disability Plaintiff alleges . . . . [A]ll of

1 | these allegations are conclusory and fail to state a claim upon which relief can be

2 | granted.").

3 |      As to the third and fourth elements, as the court observed above, Ms. Campbell

4 | alleges no relevant comparator evidence or direct evidence that her disability was a

5 | substantial factor in causing Ms. Norgren's discrimination against her.  Ms. Campbell

6 | alleges that Ms. Norgren, as the manager and operator of the Swedish Club, "directly and

7 | indirectly refused" to allow Ms. Campbell to attend the Swedish Club's public events and

8 | published a letter, dated March 9, 2023, banning Ms. Campbell from the Swedish Club.

9 | (Compl. at 2, 19-21.)  She also alleges that Ms. Norgren generally allowed other

10 | members of the public to attend the Swedish Club's public events.  (*Id.* at 14-15.)  Ms.

11 | Campbell's complaint, however, merely recites that her protected status—presumably,

12 | her disability—was a "substantial factor" in Ms. Norgren's actions barring Ms. Campbell

13 | from public events.  (*Id.* at 2, 20.)  Ms. Campbell does not allege any facts supporting,

14 | either directly or circumstantially, that conclusory allegation.  (*See generally* Compl.);

15 | *see also Spencer*, 2023 WL 4546379, at *2 ("It is not clear to the Court . . . how

16 | [Plaintiff's] disability was communicated to Defendants . . . . [A]ll of these allegations

17 | are conclusory and fail to state a claim upon which relief can be granted.")  Moreover, as

18 | the court explained above, Ms. Campbell alleges other facts that support a non-

19 | discriminatory reason for Ms. Norgren's decision.  (*See* Compl. at 10-11.)

20 |      *e.  SMC Public Accommodations Discrimination*

21 |      The SMC prohibits, in relevant part, discrimination in places of public

22 | accommodation, including refusing admission or engaging in harassing or intimidating

1    conduct, because of an individual or group's protected trait or category.  *See*

2    SMC 14.06.030(B)(2).  Protected traits or categories under the SMC include, in pertinent

3    part, race, creed, national origin, political ideology, or "the presence of any disability."

4    *See* SMC 14.06.020.  The SMC provides a private right of action.  *See* SMC

5    14.06.040(A).  The SMC does not, however, specify the standard that the court should

6    use in determining whether a violation occurs, *see generally* SMC 14.06.030, and the

7    parties and the court have identified no case law directly on point (*see* Def. Br. at 11; Pl.

8    Br. at 8-9).  Because the SMC and the WLAD both broadly prohibit discrimination in

9    places of public accommodation (*compare* SMC 14.06.030(B), *with* RCW

10   49.60.030(1)(b)), the court construes the elements of a public accommodations

11   discrimination claim under the SMC consistently with the elements of such a claim under

12   the WLAD[8]—except, as is relevant here, that the SMC contains broader definitions of

13   discrimination and of protected classes and traits.  *See* SMC 14.06.020.

14       Accordingly, the court's analysis of Ms. Campbell's public accommodations

15   discrimination claim under the SMC tracks the court's above analysis of Ms. Campbell's

16   WLAD claim.  Specifically, Ms. Campbell fails to state a claim against Ms. Norgren

17   under SMC 14.06.030 for two reasons:  (1) Ms. Campbell fails to allege facts showing

18   that she is a member of a protected class under SMC 14.06.020, and (2) Ms. Campbell

19   fails to allege facts showing, either directly or indirectly, that her membership in that

20

21       [8] Courts in Washington have likewise relied upon the WLAD's standards in interpreting other chapters of the Human Rights title of the SMC. *See, e.g.*, *Russell v. Dep't of Human*

22   *Rights*, 854 P.2d 1087, 1090-91 (Wash. Ct. App. 1993).

1  protected class was a substantial factor motivating Ms. Norgren's decision to ban her

2  from the Swedish Club's public events.  As the court explained above, Ms. Campbell

3  must do more than plead her top-level conclusions (*see, e.g.*, Compl. at 21 (alleging that

4  Ms. Norgren engaged in harassing behavior because of Ms. Campbell's "disability, age,

5  sex, and political ideology[,]" without more); she must plead sufficient factual matter to

6  state a claim that is plausible on its face.

7       In sum, upon its review of Ms. Campbell's allegations, the court concludes that

8  Ms. Campbell has failed to state public accommodations discrimination claims under

9  Title II, the WLAD, and the SMC.  Accordingly, the court dismisses Ms. Campbell's

10  claims without prejudice.

11  **C.    Leave to Amend**

12       When a court dismisses a *pro se* plaintiff's complaint, it must give the plaintiff

13  leave to amend "[u]nless it is absolutely clear that no amendment can cure the defect" in

14  the complaint.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  Put another

15  way, "[a] district court does not err in denying leave to amend where the amendment

16  would be futile."  *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992); *see*

17  *also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051-52 (9th Cir. 2008) (affirming

18  dismissal without leave to amend where a party previously received leave to amend and

19  filed an amended complaint that suffered from the same defects as the original

20  complaint).

21       As the court observed above, because Ms. Campbell's claims against Ms. Norgren

22  concerning the events before and including the termination of Ms. Campbell's

ORDER - 14

1  employment with the Swedish Club and the termination of Ms. Campbell's membership

2  are barred by claim preclusion, the court dismisses those claims with prejudice.

3      As to Ms. Campbell's other claims, Ms. Campbell has not yet amended her

4  complaint, and it is not absolutely clear to the court that no amendment can cure the

5  defects identified in this order.  Accordingly, the court grants Ms. Campbell leave to

6  amend her complaint to add relevant factual allegations to support her public

7  accommodations discrimination claims under Title II, the WLAD, and the SMC.  The

8  court warns Ms. Campbell that it will not tolerate strategic omission of pertinent facts

9  that may undermine her claims.  At the time, the court does not grant Ms. Campbell leave

10 to add new claims or defendants in amending her complaint.  If Ms. Campbell fails to file

11 an amended complaint that complies with and remedies the deficiencies identified in this

12 order by **July 3, 2025**, the court will dismiss Ms. Campbell's claims with prejudice.

13                              **III.    CONCLUSION**

14      For the foregoing reasons, the court GRANTS in part and DENIES in part

15 Defendants' motion to stay or dismiss (Dkt. # 28), as follows:

16      (1)  The court DENIES Defendants' motion to dismiss Ms. Campbell's claims

17 based upon claim preclusion as to the *Lucas* Dismissal Order.

18      (2)  The court DISMISSES Ms. Campbell's claims against Ms. Norgren

19 concerning the events before and including the termination of Ms. Campbell's

20 employment with the Swedish Club and the termination of Ms. Campbell's membership

21 with prejudice.

22

ORDER - 15

1    (3)  The court DENIES Defendants' motion to dismiss Ms. Campbell's claims

2  against Ms. Norgren based upon claim preclusion for the period after Ms. Campbell's

3  membership with the Swedish Club was terminated.

4    (4)  The court DISMISSES Ms. Campbell's remaining claims without prejudice

5  and with leave to amend, as specified in this order, by no later than **July 3, 2025**.

6

7    Dated this 13th day of June, 2025.

8    _____

9    JAMES L. ROBART
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 16